**UNITED STATES DISTRICT COURT**
**District of Massachusetts (EASTERN)**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.** ("Comcast") ) | Case No.: **1:04-cv-12472-DPW** |
| ) | |
| ) | **PLAINTIFF'S MOTION FOR** |
| Plaintiff, ) | **DEFAULT JUDGMENT** |
| ) | |
| vs. ) | |
| ) | |
| **Linda Silva** ) | |
| ) | |
| Defendant ) | |
| ) | |

Plaintiff hereby moves this Court for a Judgment by Default in the above-entitled action against the Defendant. The Plaintiff also requests that this Court assess non-Liquidated Damages after considering the Plaintiff's filings made herewith. The Plaintiff contends that the court should be able to assess non-liquidated damages in this action based upon the facts as determined through the Defendant's default all in accordance with Fed. R. Civ. P. 55(b)(2). However, should this Court determine that testimony is necessary, or even helpful for the assessment of non-liquidated damages then the Plaintiff requests that such a hearing be scheduled.

In support of this Motion, Plaintiff submits:

1. That a Default was entered against the Defendant on February 6, 2006.

2. That the Defendant has still failed to reply or otherwise defend the claims set forth in Plaintiff's complaint;

3. That the Defendant is not an infant or incompetent;

4. That the Defendant is not in the military service; and,

5. That the Plaintiff is entitled to damages and other civil remedies as set forth below.

In further support of this Motion, please see:

Page 1

1. Memorandum of Law in Support of Plaintiff's Motion for Default Judgment.

2. Affidavit of Attorney John M. McLaughlin.

3. Affidavit of Mark Mondalto.

4. Proposed Order of Default.

**WHEREFORE** Plaintiff respectfully requests that this Court enter Default Judgment in favor of the Plaintiff and against the Defendant for the following:

Pursuant to all of the above, the Plaintiff is entitled to a Default Judgment as follows:

1. $4,000.00 in statutory damages pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) and /or 47 U.S.C. § 553(c)(3)(B) for the violation of 47 U.S.C. § 553(a);

2. costs $299.90 pursuant to 47 U.S.C. 553(c)(2)(C);

3. The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A) utilizing the following language or language of a similar nature:

> "The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in violation of provisions of Title 47";

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961; and,

5. Attorney's fees of $763.00 pursuant to Title 47 U.S.C. 553(c)(2)(C).

                                  Respectfully Submitted for the Plaintiff,
                                  Comcast of Massachusetts I, Inc.
                                  By Its Attorney,

<u>4/12/2006</u>                             <u>/s/ John M. McLaughlin</u>
Date                                   John M. McLaughlin
                                        Green, Miles, Lipton & Fitz-Gibbon LLP
                                        77 Pleasant Street
                                        P.O. Box 210
                                        Northampton, MA 01061-0210
                                        BBO No 556328

**CERTIFICATE OF SERVICE**

    I, John M. McLaughlin, attorney for the Plaintiff, hereby certify that on April 12, 2006, I served a copy of the foregoing Motion for Default Judgment, Memorandum of Law, Proposed Order, Affidavit of John M. McLaughlin were sent via first class mail, postage pre-paid to:


Ms. Linda Silva
28 Florence Street
Dracut, MA 01826


                                                       /s/ John M. McLaughlin
                                                       John M. McLaughlin

**UNITED STATES DISTRICT COURT**
**District of Massachusetts (EASTERN)**

| | | |
|---|---|---|
| **Comcast of Massachusetts I, Inc.** | ) | Case No.: **1:04-cv-12472-DPW** |
| | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF JOHN M.** |
| | ) | **MCLAUGHLIN, ESQ.** |
| vs. | ) | |
| | ) | |
| **Linda Silva** | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

Now comes the affiant, and makes this his sworn statement, under the pains and penalties of perjury, of his own personal knowledge.

## GENERAL FACTUAL ASSERTIONS

1. I, John M. McLaughlin, represent the Plaintiff in the above-entitled action.

2. I am a member of the Law Firm of Green, Miles, Lipton & Fitz-Gibbon LLP.

3. I have used paralegals from the firm to assist me in this case.

## FACTUAL ASSERTIONS AS TO ATTORNEY'S FEES

4. My usual hourly rate is $200.00 per hour. The usual hourly rate of the paralegals in our firm is $90.00 per hour. These rates are more than reasonable for telecommunication civil litigation specialists.

5. I have been a member of the Federal Communications Bar Association and I have been heavily involved in telecommunications litigation since the early 1990's. I have represented Comcast, DIRECTV, Cox, ATTB and numerous MediaOne and/or Continental Cablevision corporate entities in hundreds of cases.

6. The time records have been edited to remove confidential communications with the client. The Plaintiff reserves the right to amend its claim for attorney's fees

and costs should Plaintiff's Counsel have to attend a Default Hearing in Boston and Plaintiff may also bear certain costs with reference to said hearing. The details of the time records to-date are set forth below. Also, I have already reduced the billable time from the actual time spent on reviewing and sorting my time records to take into account the first circuit case of *Brewster v. Dukakis*, 3 Fed.3d 488, (1st Cir. 1993) which provides that attorney's fees for work on affidavit for fees should be billed at a reduced rate.

**ATTORNEY'S HOURS:**

| Date | Description | Hours |
|---|---|---|
| 11/22/04 | Review Draft of Complaint | .30 |
| 01/12/05 | Review Entry for Default | .20 |
| 04/11/06 | Start Drafting Motion Memo and Affidavits for Default | 1.50 |
| 04/12/06 | Finish Drafting Motion Memo and Affidavits for Default | 1.50 |

**SUBTOTAL of hours**                                                                     3.50
At $200.00 per hour

**SUBTOTAL amounts**                                                                **$700.00**

**PARALEGAL'S HOURS:**

| Date | Description | Hours |
|---|---|---|
| 11/22/04 | Draft Complaint | .70 |

**SUBTOTAL of hours**                                                                      .70
At $90.00 per hour

**SUBTOTAL amount**                                                                   **$63.00**

**Total Amount**                                                                        **$763.00**

Page 2

7. No attorney's fees have been paid by the Plaintiff in the case at bar because the case is covered by a contingency fee agreement and there has not been and may never be any actual recovery.

**OTHER FACTUAL ASSERTIONS**

8. The Default of the Defendant has been entered for failure to appear in this action.

9. The undersigned believes the Court can assess statutory damages in this matter without testimony. Yet, if the court believes testimony is necessary or even helpful, the Plaintiff will fully cooperate and provide fact witnesses and/or expert witnesses if required.

10. On information and belief, the Defendant is not an infant or an incompetent and the Defendant is not in the military service.

11. The Court should also take notice of the fact that initially Plaintiff intended to serve Defendant 28 Florence St. Dracut, MA, but the return of service indicates that service was made at a different address, 24 Sidney Street, Lowell, MA 01852.

12. Although, not required at this point, the Plaintiff intends to mail a copy of the Motion for Default Judgment documentation to the 24 Sidney Street, Lowell, MA address.

Subscribed and sworn to, under the pains and penalties of perjury, this 12th day of April, 2006.

                                                /s/ John M. McLaughlin
John M. McLaughlin
Green, Miles, Lipton & Fitz-Gibbon LLP
77 Pleasant Street
P.O. Box 210
Northampton, MA  01061-0210
Telephone (413) 586-0865
BBO No. 556328

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Comcast of Massachusetts I, Inc. ) | Case No.: **1:04-cv-12472-DPW** |
| ) | |
| Plaintiff, ) | |
| ) | **AFFIDAVIT OF** |
| vs. ) | **MARK MONDALTO** |
| ) | |
| Linda Silva ) | |
| ) | |
| Defendant ) | |

Now comes the Affiant, and makes this his sworn statement, under the pains and penalties of perjury, of his own personal knowledge.

*Employment and Training*

1. My name is Mark Mondalto.

2. I am employed by Comcast as an Area Piracy Specialist. I also worked in a similar position for Comcast's predecessor in interest.

3. In the interests of simplicity, throughout this Affidavit I will refer to Comcast of Massachusetts I, Inc. and/or its predecessor in interest as "Comcast".

4. I have been trained by Comcast and I have been in my position or a similar position to this for a number of years. Through this training and experience I have become familiar with:

    a. Comcast's encryption and security system;

    b. Unauthorized methods of descrambling Comcast's scrambled signals;

    c. Black market devices to enable unauthorized descrambling; and

    d. The methodology of testing Comcast's own converters/descramblers to determine if such devices have been covertly modified to receive the unauthorized interception of signals.

Page 1

*Comcast's Analog System*

5. In order to protect its signals and maintain the value of its services, Comcast encrypted and/or scrambled, in an analog fashion, some of its signals so that the signals would have to have first been decoded by electronic decoding equipment in order to be viewed clearly on a television receiver. Take note that throughout this Affidavit I am referring to analog scrambling and descrambling as that was the predominant method of scrambling used at the time pertinent to this case. Today most scrambling is done in a digital manner.

6. Comcast utilized analog encryption to encrypt and/or scramble signals for premium channels, such as HBO, Showtime, and Cinemax, for which subscribers would have paid a separate monthly subscription fee, and for pay-per-view events, such as a pay-per-view movies, adult pay-per-view offerings and special event pay-per-view offerings, for which subscribers would have paid a specific one time charge to view each pay-per-view signal.

7. Comcast issued/leased to most of its subscribers a device called an analog "addressable converter/descrambler". These devices converted signals for older televisions that were not "cable ready" and they descrambled analog signals based upon the instructions that the cable company sends to the addressable converter/descrambler. The crucial element of the addressable converter/descrambler was that it was "addressable". That meant the cable company could "address" (give instructions to) the descrambler. "Addressability" refers to the descrambler's ability to descramble signals based *only* upon the instructions that it receives from the cable company.

8. Unfortunately, it was also possible to modify or have some third party modify an addressable converter/descrambler to covertly create a non-addressable coaxial cable analog descrambler. Such a modification was often called "chipping" a box. Chipping a box is where an individual places certain electronic equipment, often called "chips", inside the electronic circuitry of a legitimate, addressable converter/descrambler to modify the device in such a way that it then becomes a non-addressable descrambling device. The modified converter/descrambler could then not be addressed with instructions; instead it would simply descramble Comcast's scrambled signals without any instructions from Comcast.

9. Please realize that an individual in possession of a modified ("chipped") converter/descrambler or other unauthorized descrambling device would still need to purchase some cable television signals from Comcast in order to allow the scrambled signals to enter the home and thereafter be covertly descrambled.

10. Additionally, the non-premium cable television stations (e.g. MTV, The History Channel, etc.) are offered to subscribers in groupings of channels ("tiers"). These channels are either delivered in groups to the subscriber in a non-scrambled fashion or they are simply not delivered into the home at all. This also explains why an individual with a descrambling device might still be paying a significant amount to the cable television company while utilizing a descrambler to descramble the premium channels. If an individual with an unauthorized de-scrambling device, such as a modified ("chipped") converter/descrambler, wanted access to *all* stations, that individual would still have to pay to have all the non-scrambled stations to come into

the home. The Individual could then use the modified ("chipped") converter/descrambler to descramble the premiums stations and pay-per-view signals.

**Facts Regarding Defendant's Account**

11. A particular converter/descrambler, bearing serial number CA79ABQSW, was issued by Comcast and it was in the account of/possession of the Defendant on or before April 13, 2000.

12. Converter/descrambler CA79ABQSW was returned to Comcast by the Defendant or her agent on November 27, 2001.

13. Shortly after Converter/descrambler CA79ABQSW (hereinafter the "device") was returned to Comcast I tested the device; the test evidenced the fact that this device had been electronically modified while in the possession of the Defendant so as to allow for the unauthorized reception of secured cable system programming including premium and pay per view channels.

14. Significantly, the account history reveals that the Defendant *did not* order any premium channels or pay-per-view offerings while in possession of the device.

15. This Defendant's account history does reveal that the Defendant *did* purchase non-premium (non-scrambled) stations while in possession of the device.

16. It should also be realized that even with a descrambling device the Defendant would have to pay for non-scrambled stations to receive them. Accordingly, the Defendant's account history is totally consistent with the covert use of a descrambling device.

17. Based upon the facts known to me and *without any input from the Defendant*, it could be inferred that the Defendant modified her converter/descrambler to get all

premium channels and pay-per-view offerings soon after this device went into her account in April of 2000 and that it was there after working as an analog non-addressable descrambler until it was removed in November of 2001. Accordingly I will refer to this eighteen month period as the pertinent time frame.

18. During the pertinent timeframe, charges and offerings varied significantly but taking into account the length of time, the variations in price and variations in offerings, it is reasonable to state that the Defendant, through the use of the device, would have had access to all of the:

   a. Premium channels with an *approximate on average* price of $65.00 per month. This $65.00 figure represents the value of the premium channels the Defendant had access to over and above the non premium stations he was actually paying for.

   b. Pay per view movie offerings with an *approximate on average* price of $3.95 per movie. There were numerous movies offered per month.

   c. Adult pay per view movie offerings with an *approximate on average* price of $8.00 per movie. There were numerous Adult movies offered per month

   d. Special event pay per view offerings (e.g.; boxing or wrestling match) with an *approximate on average* price of $30.00 per special event. On average there was at least one special event per month.

19. Also of assistance in calculating the amount of unauthorized interception is the fact that Comcast did a detailed analysis of its legitimate, paying subscribers in a similar New England franchise as to their pay-per-view purchasing in the month of February, 2003. This analysis showed that a statistically significant number (.17%)

of its legitimate, paying, high end purchasers purchased fourteen (14) or more pay per-view movies during that particular month, an average cost of $55.30 per month. I will call this "the high end purchaser" analysis.

Subscribed and sworn to, under the pains and penalties of perjury, this 11 day of April 2006.

Mark Mondalto

**UNITED STATES DISTRICT COURT**
**District of Massachusetts (EASTERN)**

| | | |
|---|---|---|
| **Comcast of Massachusetts I, Inc.** ("Comcast") ) | ) | Case No.: **1:04-cv-12472-DPW** |
| Plaintiff, ) | ) | **ORDER OF** |
| | ) | **DEFAULT JUDGMENT** |
| vs. ) | ) | |
| | ) | |
| **Linda Silva** ) | ) | |
| | ) | |
| Defendant, ) | ) | |
| | ) | |
| ) | | |

The Court, having considered the Plaintiff's Motion for Default Judgment and the accompanying documentation filed with said motion, finds that the Plaintiff is entitled to a Default Judgment as follows:

1. $_____ in baseline statutory damages pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) for the violation of 47 U.S.C. § 553(a);

2. costs $_____ pursuant to 47 U.S.C. 553(c)(2)(C);

3. The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A) utilizing the following language or language of a similar nature:

   "The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in violation of provisions of Title 47; and,

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961.

5. Attorney's fees of $_____ pursuant to Title 47 U.S.C. 553(c)(2)(C).

**SO ORDERED**.

Dated: _____    _____
                                 United States District Court Judge